**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

KIALEGEE TRIBAL TOWN,

        Plaintiff

    v.

U.S. DEPARTMENT OF THE INTERIOR, *et al*.,

        Defendants

Civil Action No. 21-0590 (CKK)

---

**MEMORANDUM OPINION**
(September 29, 2022)

In Plaintiff Kialegee Tribal Town's ("Plaintiff" or "KTT") second appearance before this Court, KTT, an incorporated town on the Muscogee (Creek) Nation's tribal land in the State of Oklahoma, brings this action against Secretary of the U.S. Department of the Interior David Bernhardt, Acting Assistant Secretary for Indian Affairs Katuk Mac Lean Sweeney ("AS-IA"), and the U.S. Department of the Interior ("DOI").  KTT challenges AS-IA's November 5, 2022 decision in *Kialegee Tribal Town v. Reg. Dir., E. Okla. Reg., BIA*. Pl.'s Ex. G (2020 AS-IA Opinion).  There, the AS-IA upheld an April 26, 2017 decision by the Eastern Oklahoma Home Regional Director of the Bureau of Indian Affairs, which denied KTT's proposed Liquor Control Ordinance. *Id.*  In the Court's last opinion on the same issue, *Kialegee Tribal Town v. Zinke*, 330 F. Supp. 3d 255 (D.D.C. 2018) (CKK) (*Kialegee I*), the Court concluded that Plaintiff had failed to state a claim for which the Court could grant relief and dismissed the action without prejudice.  As Plaintiff's second complaint again fails to state a claim upon which relief may be granted and, upon consideration of the pleadings,[1] the relevant

---

[1] The Court's consideration has focused on the following briefing and materials submitted by the parties:
- Plaintiff's Complaint ("Pl.'s Compl."), ECF No. 1;

legal authorities, and the record as a whole, the Court **GRANTS** Defendants' [29] Motion to Dismiss for failure to state a claim.

## I.  BACKGROUND

The Court shall assess the motion pursuant to Rule 12(b)(6), and therefore shall consider only "the facts alleged in the complaint," documents "incorporated by reference in the complaint, and matters about which the court may take judicial notice." *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)) (additional citation omitted).  Therefore, the Court recounts the facts of the case only as they are alleged in the complaint, except, as the Court addresses further below, those alleged facts that Plaintiff is collaterally estopped from arguing.  *See Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 99-100 (D.D.C. 2003).

### A.  History of the Creek Nation and Kialegee Tribal Town

As the Court previously explained in its last opinion in this matter, KTT is "an Indian Tribe that is federally-recognized pursuant to the provisions of the Oklahoma Indian Welfare Act of June 26, 1936, 49 Stat. 1967."  *Kialegee I*, 330 F. Supp. 3d at 259-60.  This case centers on whether KTT, a member of the historic Creek Nation, exercises concurrent jurisdiction with the Muskogee Creek Nation ("MCN").  KTT's claims that, "as a federally-recognized Indian Tribe and member of the historic Creek Nation, [KTT] has jurisdiction over all lands within the Creek Reservation as land owned in common with two other federally-recognized Creek Tribal Towns

---

- Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 33;
- Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 32;
- Defendants' Reply in Support of its Motion to Dismiss ("Defs.' Reply"), ECF No. 33.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in render a decision. *See* LCvR 7(f).

and [MCN] in accordance with treaties entered into between Kialegee and the United States and as read in context with the Indian Canon of Construction." Pl.'s Compl. at ¶ 4.  As the Court explains further below, KTT is, in fact, collaterally estopped from arguing that it has any jurisdiction over these lands for all relevant purposes.  *Infra* at 16.

Nevertheless, the Court pauses to add some historical context for Plaintiff's incorrect argument.  The historic Creek Nation, "traditionally, is actually a confederacy of autonomous tribal towns, or Talwa, each with its own political organization and leadership." *Harjo v. Andrus*, 581 F.2d 949, 951 n.7 (D.C. Cir. 1978).  "Between 1790 and 1866, the Creek Confederacy, as a collection of talwas, entered into several treaties with the United States[,]" and those treaties, which "collectively referred to a 'Creek Nation', the 'Creek Tribe' and 'the Creeks'" reserved lands to the "talwas and their larger use and subsistence areas held in common with other Creeks." Pl.'s Compl. ¶ 45.

After the ratification of the United States Constitution, the United States entered into a treaty with the historic Creek Nation on June 29, 1796 (the "1796 Treaty"), and one of the signatories to the 1796 Treaty is the Kialegee. Pl.'s Comp. at ¶ 19; Pl.'s Ex. A (1796 Treaty).  In March 1814, the Red Stick War was concluded by the Treaty of Fort Jackson (also known as the "Treaty With The Creeks, 1814"), which involved the Creeks ceding 22 million acres of land in the Southeast United States to the United States. Pl.'s Compl. ¶¶ 22-23; *see also* Pl.'s Ex. B. Two signatories to the Treaty of Fort Jackson are identified as "Kialijee," designating the Kialegee people from the Kialijee Creek, "which was part of the Creek Confederacy as it existed in Alabama prior to removal." Pl.'s Compl. at ¶¶ 24-25.

In May 1830, President Andrew Jackson signed into law the "Indian Removal Act[,]" which codified the policy of removal of Indian tribes that "ultimately resulted in the forcible

3

relocation of the Creek, Cherokee, Seminole, Choctaw and Chickasaw tribes to what is presently the state of Oklahoma." Pl.'s Compl. at ¶ 27, 32; *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1440-1442 (D.C. Cir. 1988).  KTT claims that KTT's "place as a Creek treaty tribe was established well before [this] removal period" because it was "a signatory to the 1796 Treaty." Pl.'s Compl. at ¶ 32.  Under the Treaty of March 24, 1832, the United States granted the historic Creek Nation new land in present-day Oklahoma "in fee simple with the right to perpetual self-government." *Muscogee (Creek) Nation v. Hodel*, 851 F.2d at 1442; *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2460 (2020).

In 1867, the historic Creek Nation adopted a formal constitutional government. *Muscogee (Creek) Nation v. Hodel*, 851 F.2d at 1441; *McGirt*, 140 S. Ct at 2467.  Because the Creek Nation owned their land in fee simple, the General Allotment Act of 1887, which called for the division and allotment of land then held in trust for the tribes to Indian individuals in fee simple, did not apply to the Creek Nation's reservation. *Id.*  The Curtis Act of 1898 mandated "forced allotment and termination of tribal land ownership without tribal consent unless the tribe agreed to allotment." *Id.*  Subsequently, the 1901 allotment agreement between the United States and the Creek Nation mandated the termination of the Creek Nation's government by 1906, but the Creek Nation's government persisted after Congress extended it indefinitely in the 1906 Five Civilized Tribes Act. *Id.* at 1442; *McGirt*, 140 S. Ct at 2460.

In 1934, Congress passed the Indian Reorganization Act ("IRA"), codified as amended at 25 U.S.C. §§ 5101, et seq., which was "designed to improve the economic status of Indians by ending the alienation of tribal land and facilitating tribes' acquisition of additional acreage and repurchase of former tribal domains." 1 Cohen's Handbook of Federal Indian Law § 1.05 (2019). The Act, through one of the sections at issue in this case, provides for tribal self-government

pursuant to tribally adopted constitutions, but excludes tribes in Oklahoma including the Creek

from its application. 25 U.S.C. § 5123; *Muscogee (Creek) Nation v. Hodel*, 851 F.2d at 1442.

Pursuant to § 5108, the Secretary of the Interior was authorized "to acquire . . . any interest in

lands . . . for the purpose of providing land for Indians." 25 U.S.C. § 5108.

 In 1936, Congress passed the Oklahoma Indian Welfare Act ("OIWA"), which allowed

tribes in Oklahoma to form constitutional governments and adopt corporate charters. *Muscogee*

*(Creek) Nation v. Hodel*, 851 F.2d at 1442.  KTT is a federally recognized Indian tribe,

organized under the OIWA, which is governed by a constitution and bylaws approved by the

Assistant Secretary of the Interior. Pl.'s Compl. at ¶ 42; *Oklahoma v. Hobia*, 775 F.3d 1204,

1206 (10th Cir. 2014), cert den., 136 S. Ct. 33 (2015).  KTT also has a corporate charter

approved by the Assistant Secretary of the Interior, which states that "[n]o property rights or

claims of the Kialegee Tribal Town existing prior to the ratification of this Charter shall be in

any way impaired by anything contained in this Charter [and further,] the Tribal Town

ownership of unallotted lands, whether or not occupied by any particular individuals, is hereby

expressly recognized." Pl.'s Compl. ¶¶ 42, 44 (emphasis omitted).  At present, KTT "has no

reservation and, in a 1990 application it submitted to the Bureau of Indian Affairs . . . stated that

it 'had no land.'" *Oklahoma v. Hobia*, 775 F.3d at 1206.  In 1979, the Creek Nation adopted a

new constitution pursuant to OIWA, using the name Muscogee Creek Nation (MCN), and its

courts exercise exclusive jurisdiction over all Indian country within the Nation's territory.

*Muscogee (Creek) Nation v. Hodel*, 851 F.2d at 1443; *McGirt*, 140 S. Ct at 2467-2468.

 **B. Kialegee Tribal Town I and II**

 In the first suit brought by KTT, *Kialegee Tribal Town v. Zinke*, 330 F. Supp. 3d 255

(D.D.C. 2018) (CKK) (*Kialegee I*), KTT sued the Department of the Interior and associated

officials for substantially identical relief.  *Id.* at 258.  In *Kialegee I*, KTT made the same general request they make here for the enforcement of KTT's alleged rights under historical treaties, which would allow for the exercise of jurisdiction over lands in the Creek reservation.  *Kialegee I*, 330 F. Supp. 3d at 258; Pl.'s Compl. at 2.  Specifically, KTT argued that because it is a signatory to the Treaty of 1833 establishing the Creek reservation, the Creek reservation is also considered KTT's reservation, and accordingly, KTT may lawfully exercise jurisdiction over lands within the historic boundaries of the Creek reservation.  *Kialegee I*, 330 F. Supp. 3d at 261. KTT alleged further that the Defendants have "repeatedly violated 25 U.S.C. § [5123](f) by blocking [Plaintiff] from jurisdiction on lands located within the Creek Reservation." *Id.*

In *Kialegee I*, Plaintiff identified three agency actions that allegedly violated § 5123(f), which included the agency decision that is the subject of the AS-IA's 2020 decision raised here. *Id.* at 268. Those actions included: (1) the Eastern Oklahoma Regional Director's April 16, 2017 decision that denied KTT's proposed Liquor Control Ordinance and was then pending on appeal; (2) the 1991 BIA decision that Defendants raise here for the purpose of issue preclusion, *Kialegee Tribal Town of Okla. v. Muskogee Area Dir., BIA*, 19 IBIA 296, 298 (1991); and (3) a May 24, 2012 Memorandum from the National Indian Gaming Commission (NIGC) concluding that KTT lack jurisdiction over the site of a proposed gaming facility in Broken Arrow, Oklahoma for the purposes of the Indian Gaming Regulatory Act. *Kialegee I*, 330 F. Supp. 3d at 268.

This Court found that (1) KTT failed to exhaust its administrative remedies for the Eastern Oklahoma Regional Director's decision because it was still pending on appeal, (2) KTT's challenge to the 1991 BIA decision was barred by the relevant statute of limitations, and (3) the NIGC Memorandum was not an agency action.  *Id* . Accordingly, this Court held that

KTT failed to offer specific agency actions constituting a cause of action and dismissed KTT's complaint without prejudice for failure to state a claim. *Id.*

There is just one difference between *Kialegee I* and this case:  the Eastern Oklahoma Regional Director's 2017 decision is no longer pending on appeal but was affirmed by the AS-IA's 2020 decision.  Pl.'s Compl. at 2; Pl.'s Ex. G (2020 AS-IA Opinion).  KTT evidently hopes its exhaustion of administrative remedies will yield the declaratory and injunctive relief it seeks. Defendants disagree, moving to dismiss Plaintiff's complaint in its entirety.  Defs.' Mot., ECF No. 29 at 11.  As that motion is now fully briefed, the Court turns to its resolution.

## II.  LEGAL STANDARD

Pursuant to Federal Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

### III.  DISCUSSION

KTT seeks relief from the 2020 AS-IA decision in *Kialegee Tribal Town v. Reg. Dir., E.*

*Okla. Reg., BIA*, Pl's Ex. G, which affirmed the Eastern Oklahoma Regional Director's 2017

decision to reject KTT's proposed Liquor Control Ordinance. Pl.'s Compl. at 2.  In support of the

proposed Liquor Control Ordinance, KTT claimed shared jurisdiction over all land within the

Creek reservation and exclusive jurisdiction over all land within the Creek reservation that was

allotted to or held in trust or restricted status for KTT members. Pl.'s Ex. G at 103.  The legality

of liquor sales in Indian country is governed by 18 U.S.C. § 1161, which requires, among other

things, that sales conform to "an ordinance duly adopted by the tribe having jurisdiction over

such area of Indian country, certified by the Secretary of the Interior[.]" 18 U.S.C. § 1161.  The

AS-IA concluded that KTT's proposed Liquor Control Ordinance must be denied because KTT

"does not exercise jurisdiction over any area of Indian Country[.]" Pl.'s Ex. G. at 114.

KTT's complaint is not the model of clarity.  Construing the complaint as generously as

possible, KTT seems to seek relief under the Indian Reorganization Act, specifically 25 U.S.C. §

5123(f), which prohibits federal departments from making decisions that diminish the "privileges

and immunities available to [an] Indian tribe relative to other federal recognized tribes by virtue

of their status as Indian tribes." 25 U.S.C. § 5123(f); Pl.'s Comp. at 3.  First, KTT's complaint

fails because this provision of the Indian Reorganization Act does not create a private cause of

action.  Even if it did, KTT failed to plead such claims in its complaint and has failed to plead

any other cause of action.   Although the Court would be inclined to stop there, the Court goes

further to explain that, even had KTT pleaded a cognizable claim, that claim would fail because

KTT is collaterally estopped from pleading facts supporting it.

### A.  Failure to State a Claim

The Court must begin by stressing that KTT's complaint never pleads a cognizable cause of action.  The complaint's two counts are (1) a request for a declaratory judgment and (2) a request for injunctive relief.  Pl.'s Compl. at 29-30.  Needless to say, these are remedies, not cognizable causes of action. *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("the availability of [declaratory] relief presupposes the existence of a judicially remediable right.") (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)); *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) ("Injunctive relief, however, is not a freestanding cause of action, but rather—as its moniker makes clear—a form of relief to redress the other claims asserted by Plaintiff.").

Although the Court must liberally construe KTT's complaint at this stage of proceedings, the Court may not draw "argumentative inferences" in favor of KTT or add theories of relief to KTT's complaint that are not there.  *See S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2022 WL 1801150, at *3 (D.D.C. June 2, 2022) (internal quotation marks omitted).  Nevertheless, assuming *arguendo* that the complaint included a purported cause of action arising under the Indian Reorganization Act ("IRA"), it would still fail because the relevant sections of the IRA do not create an independent cause of action.

 "The question of the existence of a statutory cause of action is . . . one of statutory construction."  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).  In determining whether a statute contains a private cause of action, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Accordingly, the

question of whether § 5123(f) provides a private cause of action must begin with its text. *Id.* at

286-88; *Touche Ross & Co. v. Redington*, 442 U.S. at 568.  The text of § 5123(f) is as follows:

> Departments or agencies of the United States shall not promulgate any regulation or
> make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461
> et seq., 48 Stat. 984) as amended, or any other Act of Congress, with respect to a
> federally recognized Indian tribe that classifies, enhances, or diminishes the privileges
> and immunities available to the Indian tribe relative to other federally recognized tribes
> by virtue of their status as Indian tribes.

25 U.S.C. § 5123(f).

Notably, the text of § 5123(f) contains no explicit provision of a private right of action.

As such, the Court turns to the following factors to determine whether the statute implies a

private right of action:  (1) whether the plaintiff is a member of the class the statute was enacted

to benefit, such that the statute creates a federal right for the plaintiff; (2) whether there is an

explicit or implicit indication of intent to create or deny a private right of action; (3) whether

implying a private right of action is consistent with the purpose of the statute; and (4) whether

the cause of action is traditionally governed by state law, such that implying a cause of action

based on federal law would be inappropriate.  *Cort v. Ash*, 422 U.S. 66, 78 (1975).

Like the provision at issue in *Alexander*, where the Court declined to find an implied

private right of action, § 5123(f) lacks "'rights-creating' language[.]"  *See* 532 U.S. at 288

(quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690, n. 13 (1979)).  "Statutes that focus on

the person regulated rather than the individuals protected create 'no implication of an intent to

confer rights on a particular class of persons.'" *Alexander*, 532 U.S. at 289.  The text of 5123(f)

is directed not to Indian tribes but rather to federal agencies. 25 U.S.C. § 5123(f).  This provision

only proscribes federal agencies from modifying or interfering with the *pre-existing* rights of

federally recognized Indians tribes; the provision creates no rights prospectively.  *Id.*

The text of § 5123(d), which, unlike § 5123(f), explicitly provides a private cause of action to enforce the procedure for constitutions proposed by Indian tribes, is also relevant. The fact that Congress explicitly provided a private cause of action in another sub-section suggests that, if Congress intended to create a private cause of action under § 5123(f), Congress would have done so explicitly. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.").  As such, the Court concludes that the text of § 5123(f) does not create a new federal right for Indian tribes nor does it contain any explicit or implicit indication of an intent to create a private cause of action to enforce such a right.  Accordingly, the Court "begin[s] (and find that [it] can end) [its] search for Congress's intent [to create a private cause of action] with the text and structure." *Alexander*, 532 U.S. at 288.

This conclusion is also consistent with precedent in this Circuit under which a claim alleging a violation of § 5123(f) is properly pled as an Administrative Procedures Act claim.  *Koi Nation of N. Calif. v. U.S. Dep't of Interior*, 361 F. Supp. 3d 14, 59 (D.D.C. 2019) *amended in irrelevant part sub nom. Koi Nation of N. Calif. v. U.S. Dep't of the Interior*, Civ. A. No. 17-1718 (BAH), 2019 WL 11555042 (D.D.C. July 15, 2019) (finding that a DOI regulation which denied the Koi Nation gaming eligibility under the Indian Gaming Regulatory Act and as a result diminished the Koi Nation's privileges and immunities guaranteed in violation of § 5123(f) was invalid under the APA's arbitrary and capricious standard).  The United States Court of Appeals for the District of Columbia Circuit has also suggested that § 5123(h), which also does not provide an explicit cause of action, does not contain even an *implied* private cause of action and that a claim for relief under that subsection is properly stated as an APA claim. *Calif. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1266 (2008) ("Although Burley initially filed two

claims for relief—one under § 476(h) of the Act and the other under the Administrative

Procedure Act ("APA"), 5 U.S.C. § 704—we review only the APA claim because § 476(h)

offers no private cause of action.").  Given the striking similarity between these two statutory

subsections, the Court is also convinced that Circuit precedent supports the Court's conclusion.

   In sum, Plaintiff has failed to plead a freestanding cause of action.  Without one, the

Court must dismiss the complaint for failure to state a claim upon which relief may be granted.

   **B.  Issue Preclusion**

   Second, Defendants argue that issues resolved in two prior decisions, to which KTT was

a party, preclude the issue raised here by KTT.  Specifically, Defendants point to (1) a 1991

Board of Indian Appeals decision, *Kialegee Tribal Town of Okla. v. Muskogee Area Dir., Bureau

of Indian Affairs*, 19 IBIA 296, 298 (1991), and (2) a federal court decision *Oklahoma v. Hobia*,

No. 12-cv-054-GKF-TLW, 2012 WL 2995044 (N.D. Okla. July 20, 2012).  Here, the critical

issue is whether KTT exercises jurisdiction over Indians lands within the Creek reservation in

Oklahoma such that KTT is entitled to the approval of their proposed Ordinance under 18 U.S.C.

§ 1161. Pl.'s Ex. G at 103; Pl.'s Compl. at 18.  Because the 1991 Board of Indian Appeals

decision already resolved that question against KTT, KTT is collaterally estopped from arguing

otherwise here.

   In the dispute resolved by the 2020 AS-IA decision, KTT's Liquor Control Ordinance

asserted exclusive jurisdiction over "Kialegee Indian Country," defined as the land in the Creek

reservation allotted to KTT members according to the Curtis Act or otherwise held in trust or

restricted status by the United States on behalf of KTT members, and shared jurisdiction over all

other land in the Creek reservation with the Muscogee Creek Nation and the other Tribal Towns.

Pl.'s Ex. G at 104, 109.  The 1991 BIA decision and *Hobia* respectively decided whether KTT

exercised jurisdiction over (1) land within the Creek reservation for the purposes of KTT's request for the acquisition of the land in trust status pursuant to federal regulations and (2) land allotted to MCN members and within MCN jurisdiction for the purposes of KTT's operation of a gaming operating pursuant to the Indian Gaming Regulatory Act respectively. *Kialegee Tribal Town of Okla. v. Muskogee Area Dir., Bureau of Indian Affairs*, 19 IBIA at 298; *Oklahoma v. Hobia*, No. 12-cv-054-GKF-TLW, 2012 WL 2995044, at *9-10, 15 (N.D. Okla. July 20, 2012).

For the purposes of issue preclusion, "the general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015), quoting Restatement (Second) of Judgments § 27, p. 250 (1980). Specifically, the application of issue preclusion has three requirements:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015), quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

Issue preclusion also applies in the administrative context. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. at 148 ("where a single issue is before a court and an administrative agency, preclusion also often applies"). In the administrative context, "an administrative decision will be given collateral estoppel effect when 'an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Nasem v. Brown*, 595 F.2d 801, 806 (D.C. Cir. 1979)

(quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)).  Notably, while the Supreme Court's approval of the application of issue preclusion in the administrative context in *Utah Construction* is limited to decisions involving factual issues, 384 U.S. 422, the Supreme Court has also extended the application of issue preclusion to agency decisions of so-called mixed issues of law and fact, *see Hargis Indus.*, 575 U.S. at 154.   Moreover, the fact the issue raised in the different decisions arises under different statutes "does not foreclose issue preclusion" because "[o]ften a single standard is placed in different statutes." *Id.*

Beginning with the federal court decision, *Hobia* concerned an injunction sought in the Northern District of Oklahoma by the State of Oklahoma to stop the construction of a gaming operation by a member of KTT, the KTT corporation, and a related company in Broken Arrow, Oklahoma.  *Hobia*, 2012 WL 2995044 at \*1. Although the district court concluded that KTT lacked jurisdiction over the land in question as required by the Indian Gaming Regulatory Act (IGRA), the Tenth Circuit reversed and remanded to the district court with instructions to vacate the injunction and dismiss the complaint with prejudice on the grounds that the IGRA's provision of a statutory right to injunctive relief didn't extend to the circumstances of the case. *Oklahoma v. Hobia*, 775 F.3d 1204, 1214 (10th Cir. 2014).  Defendants at no point argue the Tenth Circuit's decision merits issue-preclusive effect.  Defendants do acknowledge the reversal, but nonetheless assert the decision shows KTT had "other opportunities to make its jurisdictional case and that applying preclusion here will not work an unfairness."  Defs.' Mot. at 19.  True or not, the argument is irrelevant. *United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 691 (D.C. Cir. 2013) "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *United*

Case 1:21-cv-00590-CKK   Document 35   Filed 09/29/22   Page 15 of 19

*Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Can., AFL-CIO*, 721 F.3d 678, 691 (D.C. Cir. 2013) (internal quotation marks omitted); *Hargis Indus., Inc.*, 575 U.S. at 148 ("issue of fact or law is actually litigated and determined by a valid and final judgment").  The Court therefore declines to give *Hobia* issue-preclusive effect or otherwise consider the decision in the issue preclusion analysis.

Next, the 1991 BIA decision concerned KTT's request to the Bureau of Indian Affairs for the trust acquisition of two pieces of land in Tulsa County, Oklahoma that were part of the Creek reservation.  *Kialegee Tribal Town of Okla. v. Muskogee Area Director, Bureau of Indian Affairs*, 19 IBIA 296, 298.  BIA affirmed the denial of KTT's request based on its conclusion that the lands in question were part of a reservation under the jurisdiction of the Muscogee Nation and, as a result, the Muscogee Nation's consent to the trust acquisition was required by federal regulations. 25 C.F.R. § 151.8); 25 C.F.R. § 151.2(f). BIA expressly considered the argument that "the former Creek Reservation is [KTT's] reservation for the purposes of 25 CFR Part 151." 19 IBIA 296, 302, 1991 WL 279615, at *3-4.  BIA concluded that "[t]he former Creek Indian Reservation has consistently been recognized by the Federal government as the [Muscogee] Nation's reservation, over which the [Muscogee] Nation has authority to exercise jurisdiction." *Id.* at *5.

As to whether this decision merits preclusive effect, the Court first notes that the plain text of the regulations makes clear that the legal standard governing the jurisdiction issue arising under the land trust acquisition regulation in the 1991 dispute is the same standard at issue here. The authority on which BIA reached its conclusion that KTT lacked jurisdiction over the lands within the Creek reservation was not unique to the particular regulation at issue and included the fact of the federal government's lack of recognition of KTT's jurisdiction, the Treaty of 1856,

and the Treaty of 1866 among other authorities speaking to the general question of jurisdiction over land. 19 IBIA at 302.  As the leading treatise on Indian law notes, "[i]t is important to distinguish an Indian reservation from tribal property[:] [a]n Indian reservation is a place within which a tribe may exercise tribal powers, but not all land within a reservation may belong to the tribe." 1 Cohen's Handbook of Federal Indian Law § 15.02 (2019).  This is also clear from one of the regulations governing the land trust acquisition process, which defines a reservation to include "land over which the tribe is recognized by the United States as having governmental jurisdiction." 25 C.F.R. § 151.2(f).

The statute at issue in this case, 18 U.S.C. § 1161, provides that "jurisdiction over such area of Indian country" is a requirement for a valid Liquor Control Ordinance. 18 U.S.C. § 1161. The meaning of "Indian country" in § 1161 comes from § 1151 of the same title and chapter, which defines "Indian country" as including:

> (a) *all land within the limits of any Indian reservation* under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) *all Indian allotments*, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151 (emphasis added).  Under 18 U.S.C. § 1161, the legal dimension of the issue is also which tribe has jurisdiction over the land, including reservations and allotments.  The factual aspect of the issue of whether KTT had jurisdiction over the land within the Creek reservation under one regulatory provision is the same issue as whether KTT has shared jurisdiction over all land part of Indian country (land that is part of a reservation) under the statutory provision in this case.  Under each provision, the issue is which tribe the federal government recognizes as having jurisdiction over the land within the Creek reservation.  The BIA squarely decided that issue and

concluded the Muscogee Creek Nation exercises *exclusive* jurisdiction over the Creek reservation.[2]

Second, based on BIA's express statements quoted above, it is indisputable that the issue of whether KTT has jurisdiction over land that is part of the Creek reservation, excluding land allotted to or held in trust or restricted status for KTT members, was actually and necessarily determined by the BIA. The issue of which tribe exercises jurisdiction over the land making up the Creek reservation was a fundamental component of the dispute's outcome: "Because the former Creek Reservation is the [Muscogee] Nation's reservation, and not appellant's reservation, section 151.8 requires the written consent of the Nation before land within the reservation may be taken in trust for the benefit of appellant." 19 IBIA at 302.

Third, the application of issue preclusion in this case does not create a basic unfairness to KTT. KTT at no point argues as much. Circumstances under which applying issue preclusion creates unfairness include cases where there's been "an intervening 'change in controlling legal principles[,]'" where the party precluded from re-litigating an issue lacked an incentive to litigate in the first dispute and the stakes of the second dispute are significantly greater, or where the proceedings in the first dispute were substantially defective. *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015) (quoting *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 219 (D.C. Cir. 2004)). There's no evidence of any such circumstances in this case. In particular, given KTT's own arguments about the significance of the land, it's not clear KTT had any less incentive to litigate the jurisdictional issue for the purposes of the land trust acquisition in the

---

[2] "As noted above, however, appellant may intend to argue that the entire former Creek Reservation is not only the Nation's but also appellant's reservation for purposes of Part 151. Appellant fails to support such an argument, producing no evidence whatsoever that the Secretary has ever considered the former Creek Reservation to be appellant's reservation." 19 IBIA at 303.

1991 dispute before the BIA compared to their incentive to litigate the jurisdictional issue for the purposes of a liquor ordinance in this case.  The level of detail in the 1991 BIA decision also suggests that KTT had a fair opportunity to present its claims and litigate them thoroughly; it's also worth noting that the BIA decided an appeal so this was KTT's second opportunity to litigate their claims on this issue.

Finally, the fact that the 1991 decision was made by an administrative agency does not bar the application of issue preclusion in this case. On this issue, relevant factors include "the adversariness and adequacy of administrative proceedings[.]" *Nasem v. Brown*, 595 F.2d at 806 (D.C. Cir. 1979).  As noted above, the detail of the BIA opinion suggests that KTT had ample opportunity to present their claims. 19 IBIA at 302.  The opinion also makes clears that the proceedings were adversarial: parties were represented by counsel and had the opportunity to present briefing, and the BIA also considered additional briefing from the Cherokee Nation of Oklahoma, which appeared as amicus curiae. *Id.* at 296, 298.

To the extent KTT states a cause of action based on the 2020 AS-IA decision affirming the rejection of the proposed Liquor Ordinance, such a challenge would have to contest the primary basis for the decision, which was that KTT lacks the jurisdiction over land within the Creek reservation that is required for the approval of KTT's proposed Liquor Control Ordinance by 18 U.S.C. § 1161.  The 1991 BIA decision plainly resolved that issue as it relates to land within the Creek reservation.  KTT does not have jurisdiction within the Creek reservation required for the proposed Liquor Control Ordinance.  Accordingly, even if KTT had pleaded an APA claim, KTT is precluded from arguing such facts entitle it to the relief it requests.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' [29] Motion to Dismiss is **GRANTED**.  An

appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: September 29, 2022